Nash, J.
As to the first reason assigned for a new trial, it is sufficient to say the case does not disclose what testimony the defendant objects to, nor does it shew that there was any objection made to the reception of any testimony at the time it was offered. We are therefore to presume it was received by consent, and, after verdict, neither party can be heard in objection to it. Upon the questions of law, we see no error in the opinion of his Honor. The defendant prayed the Court to instruct the jury, that, if he was bound by the warranty, then Hunter cannot recover in this action, because he was not liable, in the suit brought against him, Jameson being alone liable to the purchaser. The instruction prayed for, naturally connects itself with the second objection taken *254 by the defendant’s counsel on the argument, which is, if Hunter warranted the' clock to Rhinehart, without instructions from Jameson, and a recovery was subsequently made against him by the purchaser, in law the present defendant is not liable in this action. It is also connected with the third reason assigned for a new trial, namely, that if, when Hunter warranted the clock to Rhinehart, the latte)- knew he was an agent, and who the principal was, he could not have made a recovery against Hunter, and it was the duty of the latter tó have shewn that upon the trial against him; These propositions will be con- . sidered together.
In order to show that an agent without special instruc • tions cannot by a warranty bind his principal, ,our attention has been called to a passage in Viner’s Abr. Tit. Master and Servant, Letter D, p. 313. It is there stated, if a servant sell a horse, with warranty, it is the sale and contract of the master, but it is the warranty of the servant, unless the master give him authority to warrp'nt. If it is meant that the warranty so made does not bind the master, and certainly such must be its meaning, the principle is not sustained by the more modern authorities. In all cases, where a person, in his own right, has power to do a particular thing, he may do it by another, and in every delegation of power to an agent, is included the authority to use all the means that are .usual- aud necessary to the execution of it with effect — 2 H. Bl. 618 — . unless specially restricted in the mode. Thus, an agent, eriiployed to get a bill discounted, may endorse it in the name of his principal, so as to bind him, unless expressly restricted. Fen. and Harrison, 3 Term, 757. So a servant entrusted to sell a horse may warrant him, unless forbidden. Brown on Actions, 174, 29 Co. Litt. 1299. Paley on Agency, 210, 28 Law Libr. 91. Nor is it necessary for the purchaser in such case to shew, that the agent had any special authority to warrant. The employment gave the power, Hilyear v. Hawke, 5 Esp. N. P. Ca. 75, 3 *255 Term Rep. 757, Alexander and Gibson, 2 Camp. 555. These cases are at war with the doctrine in Viner, and overrule it. They establish conclusively, that, in every general agency by parol, the agent has authority to bind his principal by a warranty. We are not considering now, nor is it necessary in this case, how far the restriction, put by the principal upon an agent’s power in selling, affects the purchaser. The question does not arise. The jury have found that Hunter was a general agent for the defendant in selling clocks for him in the County of Haywood, and it is not pretended that he had been forbidden to warrant. Runquish and Ditchell, 3 Esp. 65. . Nor does the case of Fen and Harrison, 3 Term 757, aid the defendant in his position. There, the agent, who was employed to get a bill discounted, was informed by his principal, that he would not indorse it, and the question was, he having done so, whether the principal was liable to the indorsee — not the case we are considering. ■ But, in that case, Lord Kenyon doubted, or rather denied, the ease, cited at the bar, of the servant warranting a horse on a sale, contrary to the instructions of bis master, and says expressly, the maxim of respondeat superior would apply, and the principal has his remedy against the agent. But, as before remarked, that is not the case here. The case of Fen and Harrison was before the Court of King’s Bench three times. In the two first trials, it was treated as the case of an indorsement by an agent, who had been forbidden so to do ; and the contest was, whether, under, such a power, the agent could bind the principal. On the third trial it was' shewn, that the principals, the defendants, did not say they would not indorse the bill. The Court were unanimous in deciding, that, as the defendants' had authorized their agent to get the bill discounted, without restraining his authority as to the mode of doing it, they were bound by his acts. 4 Term R. 178.
But it is said, that although the defendant may have-been bound to answer to the purchaser by the warranty *256 made, lie is not answerable to the plaintiff, nor bound to repay to him the money recovered from him by the purchaser. In suppoi’t of this proposition, it is said,, that, if Hunter, at the time he sold the clock to Rhinehart, made known the name of his principal, the latter alone would have been bound ; and the purchaser could have had no action against him. Bat, as he chose not to do so, the warranty was his own personal contract, and the money,, paid by him on the judgment, was money paid on his own account, and not on that of the present defendant. Without stopping to enquire the extent to which the first branch of the proposition is true, because the question does not arise here, we cannot yield our assent to the second branch. We do not so consider the law to be. We admit, that, by not disclosing his principal, he subjected himself to the action of the purchaser, but assuredly the purchaser had a good cause of action against the present defendant, the principal. When an agent, in making a contract of sale, does not disclose the name of his principal, the purchaser, when he discovers the principal, has his election which to sue, and if he can sue the principal, it must bo because he is bound by the contract of warranty as well as of sale. Patterson v. Gran-dasequi, 13th East. 62. Although then it be true, that by not disclosing the name of his principal, the plaintiff subjected himself to the action of Rhinehart, it was upon a contract made by him for the defendant, which by his agency the defendant authorized him to make. The doctrine, it is likely, is founded upon what is said in Vine'r, in the passage before referred to. We know of none other. It is there said, that when a servant does so warrant a horse, it is the sale and contract of the master, but the warranty of the servant, and the master is not answerable upon the warranty, because not annexed to the contract. Hut wc have seen that the leading principle of that case has been over-ruled, and with it must fall the incidents ; the warranty is annexed to the con *257 tract. If the doctrine were, as contended for, it would present a singular result. The purchaser, having his election to sue either, by bringing his action against the agent would throw the whole responsibility on him and the whole loss on him, for he would have no redress on his principal, for whom and by whose authority he was acting. This cannot be so ; it would be unjust. Here is an unrestricted agency to sell, and it confers the power to sell, in the usual and customary way, Paley on Agen. 212 — 28th vol. L. Lib. 91, and when such a contract exists, the law implies a guaranty on the part of the principal to indemnify the agent from all the legal consequences, that follow the sale. This principle is fully established by the case of Adamson v. Jarvis, 4 Bing. 66, 13th En. C. L. R. 345. There the defendant had employed an agent †0 sell for him certain goods, to which it subsequently appeared he had no title. The agent sold the goods, and was sued for their value by the true owner and a recovery had against him, and that action was brought by the agent to be indemnified. Chief Justice Best, in delivering the opinion of the Court, says : “ It has been stated at the bar, that this case is to be governed by the principles which regulate all laws of principal and agent — ■ agreed — every man, who employs another to do an act which the employer appears to have a right to authorize him to do, undertakes to indemnify for all such acts as ■would be lawful, if the employer had the authority he pretends to have.” This covers the principle of the case before us. The defendant, Jameson, not only seemed, but had the power, to authorize the plaintiff to make the warranty, and did so authorize him, as far as the case discloses the fact to us. As there observed, auctioneers, brokers, factors and agents do not, generally, take regular indemnities. The consequences would, to them, be serious, if having sold goods, and paid over the proceeds, upon being made to suffer in damages for a breach of a warranty, they should find the loss must be theirs, and *258 that they had no legal claim upon their principal for indemnity, for whom and at whose request they had acted.. The doctrine of this case has been recognized both in New York and in Connecticut. Powell v. Trustees of Newburgh, 19th John. R. 228. Stocking v. Sage and others, 1st Day’s Rep. 522, and is perfectly in accordance with reason and justice.
We have examined the other cases relied on by the defendant’s counsel, and perceive nothing at variance with those cited above.
We are of opinion, then, that the warranty made by the plaintiff Hunter, was within the scope of his authority, and bound both himself and the defendant, and that the latter is bound to indemnify the plaintiff to the full amount of the recovery, made by Rhinehart against him.
On the trial below, the plaintiff, under the charge of his Honor, recovered in damages $70 40; how much of this sum,, if any, was allowed for his expenses in defending the suit,, the record does not state. Nor, indeed, does-it show that any tiring was allowed on that ground, or for the costs of the suit against blunter. But we have no doubt the latter were included, and we are of opinion, he was entitled to recover them. In truth, the defendant’s-objection admits he was bound for the costs of the County Court, as he only contests those incurred by the appeal and removal. He was present at the first trial, and, the case states, managed the defence. It is not to be believed that the appeal was without his approbation. If opposed to it, he might very easily have stopped it by paying up the judgment. He did not do so, nor does it any where appear that he made any effort to stop the case. From the record, it does not appear that the plaintiff has recovered, for his costs, more than was taxed against him. in the suit of Rhinehardt. The last three cases cited are-authorities to shew he was legally entitled to recover-them.
*259 As to the want of due foi’m in the judgment against the plaintiff, the same remark applies as heretofore given. The defendant comes too late with his objection. It is not the foundation of this suit, but evidence of the ambunt of the plaintiff’s claim,
We see no error in the opinion of the Court below, and the judgment is affirmed.